IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SUSAN N.,

                      Plaintiff,

     v.                                    Civil Action No.
                                                  5:19-CV-0264 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF

DOLSON LAW OFFICE               STEVEN R. DOLSON, ESQ.
126 North Salina St., Suite 3B
Syracuse, NY 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH          MOLLY CARTER, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on January 28, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: February 6, 2020
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
SUSAN N.,

                      Plaintiff,

vs.                                       5:19-CV-264

ANDREW SAUL, Commissioner
of Social Security,

                      Defendant.

------------------------------------------------------x
```

*DECISION* - January 28, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


<u>APPEARANCES</u> (by telephone)

```
For Plaintiff:     STEVEN R. DOLSON
                   Attorney at Law
                   126 North Salina Street
                   Syracuse, New York 13202

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   Office of Regional General Counsel
                   26 Federal Plaza
                   New York, New York 10278
                     BY:  MOLLY CARTER, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1     THE COURT: Plaintiff has commenced this proceeding
2 pursuant to 42, United States Code, Sections 405(g) and
3 1383(c)(3) to challenge an adverse determination by the
4 Commissioner of Social Security. The background is as
5 follows.
6     Plaintiff was born in August of 1966. She is
7 currently 53 years of age. She was 45 years old at the time
8 of the alleged onset of her disability in January of 2012.
9 Plaintiff is 5-foot and between 4 and 6 inches in height and
10 weighs approximately 215 pounds. She is right-handed. She
11 lives in a trailer in Fulton, New York, with her mother. She
12 is separated. Plaintiff cares for grandchildren as well as
13 her mother.
14     Plaintiff has a twelfth grade education but no
15 further training or education. Plaintiff states that she
16 last worked for pay on January 12, 2012 during the hearing,
17 although her earning records show that in 2013 she earned
18 $10,630. That is shown at Administrative Transcript
19 page 188. As past relevant work plaintiff has been employed
20 as a store laborer, a pizza baker, a food sales clerk, a
21 forklift driver, a warehouse supervisor, a hand printed
22 circuit board assembler, and an order picker.
23     Physically, the primary condition of concern is a
24 cervical spine issue. Plaintiff does also have a history of
25 reporting lumbar pain. She attributes her injury to a snow

1   blowing incident, at pages 45, 203 and 345 of the
2   Administrative Transcript.  She underwent a series of
3   magnetic resonance imaging, or MRI, testing beginning on
4   November 18, 2013, as reported at 387.  That reflected some
5   disc bulges at C4-C5 and C5-C6, and a central disc herniation
6   at C6-C7.
7          There was subsequent MRI testing on March 31, 2014.
8   That's reported at 376 and 377.  And the impression at that
9   point was a small disc protrusion at C5-C6 and a moderate
10  size dorsal right extruded disc herniation at C6-C7.
11         Plaintiff underwent surgery on June 2, 2014, as
12  reported in the Administrative Transcript at 306 and
13  subsequent pages.  The surgeon was Dr. Nikhil Thakur from
14  Upstate where he performed C6-C7 anterior cervical discectomy
15  with fusion.
16         There was subsequent MRI testing on November 6,
17  2015, reported at 336 of the Administrative Transcript, which
18  showed that the hardware was in place, there was no evidence
19  of a disc protrusion at C6-C7, but it showed one of the C7
20  screws extended slightly beyond the posterior cortical
21  margin.  It also showed small disc osteophyte complexes at
22  C3-4 and C4-5, but no evidence of canal stenosis, among other
23  things.
24         Plaintiff has complained of recurring cervical pain
25  and stated that the surgery did not resolve her pain.  That's

at page 49 of her testimony.  She sees a pain specialist, Dr. Martin Schaeffer.  The record shows at page 345, among other places, that there was a discussion of injections.  She was apparently scheduled to receive injections on November 10, 2017.  There aren't any records that reflect whether that occurred or not.  She deals with her pain primarily with Aleve and other over-the-counter pain medications.  She was prescribed apparently Gabapentin but does not take it.

　　　　Her primary care provider is Anne Filipski.  She began seeing that person in October of 2017.  Prior to that time she saw Dr. Anthony Rotella.  According to the plaintiff, she has tried physical therapy but it increases her pain.  She also suffers from other conditions which were not deemed severe, including sleep apnea or a sleep disorder, chest pains, a small brain aneurysm, asthma, obesity, incontinence, a carpal tunnel syndrome release which occurred in 2001, sinus surgery that she underwent in 2014, memory loss and headaches.

　　　　Plaintiff was a smoker for thirty years, smoking about one pack of cigarettes per day.  It appears from medical records that she quit smoking in 2013.

　　　　For activities of daily living, plaintiff is able to cook, including breakfast and lunch when her grandson is not in school.  She shops, vacuums, reads, watches

1  television, cares for her mother, goes outside daily, takes
2  her grandchildren fishing, she does dishes, she dusts, she
3  walks on the treadmill.  She, according to 313 of the
4  Administrative Transcript, pitches at her grandson's softball
5  games.  She does yard work, according to 523, and she has
6  gone boating, that's at 311 of the Administrative Transcript.
7        Procedurally, plaintiff applied for Title II and
8  Title XVI benefits on December 7, 2015, alleging an onset
9  date of January 12, 2012.  In support of her application, she
10 claimed disability based on cervical and lumbar disc disease
11 with radiculopathy, bone spurs in the back, chronic pain in
12 the back, neck, nerves, arms, legs, spinal fusion, numbness
13 in her arms bilaterally, and obesity.
14       The hearing was conducted to address plaintiff's
15 claim for benefits on March 20, 2018 by Administrative Law
16 Judge Monica Jackson.  ALJ Jackson issued an unfavorable
17 decision on April 30, 2018, that became a final determination
18 of the Agency on January 14, 2019 when the Social Security
19 Administration Appeals Council denied plaintiff's request for
20 review.  In her decision ALJ Jackson applied the familiar
21 five-step sequential test for determining disability.
22       At step one she concluded that plaintiff had not
23 engaged in substantial gainful activity since January 12,
24 2012, but noted additional earnings in 2012 and 2013.  She
25 also observed that plaintiff had insured status through

March 31, 2017.

At step two ALJ Jackson concluded that plaintiff suffers from severe impairments imposing more than minimal limitations on her ability to perform basic work functions, including obstructive sleep apnea, obstructive airway disease, migraines, spondylosis status-post interior cervical discectomy and fusion surgery, degenerative disc disease, and status-post right carpal tunnel syndrome release, rejecting other of the impairments, including a brain aneurysm, obesity, and mental impairments that plaintiff claims to suffer.

At step three ALJ Jackson concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering listings 1.04, relating to spinal disorders; 1.02, involving joint disorders; 11.02, epilepsy; and 3.00, respiratory disorders.

The Administrative Law Judge next proceeded to determine plaintiff's residual functional capacity, or RFC, specifically finding that plaintiff is capable of performing light work with exceptions that were related to her headaches as well as her other conditions. They are listed at page 21; I won't recite them.

Applying that RFC finding with the assistance of

testimony of a vocational expert, ALJ Jackson concluded that plaintiff is capable of performing her past relevant work as a hand printed circuit board assembler.

He did go on, however, at step five to assess whether the Commissioner had carried his burden of establishing that there was work available in the national economy that plaintiff can perform notwithstanding her limitations. After noting that if the Medical/Vocational Guidelines were applied, or grids, and plaintiff was capable of performing a full range of light work, Rule 202.21 of the grids would direct a finding of no disability. Because there were additional exertional and non-exertional limitations that would erode the job base on which the grids are based, the Administrative Law Judge concluded based on the testimony of the vocational expert that plaintiff is capable of performing as a cashier, merchandise marker and router, and, therefore, is not disabled.

As you know, my task is limited. I must determine whether correct legal principles were applied and the resulting determination is supported by substantial evidence, which is defined as such evidence as reasonable minds would find adequate to support a conclusion.

Plaintiff's sole contention is that the Administrative Law Judge improperly rejected the opinion at page 848 of Dr. Elke Lorensen, a consultative examiner, who

1  found that plaintiff is moderately limited in her ability to
2  turn her head.  There was no inclusion in the residual
3  functional capacity finding and, therefore, the hypothetical
4  that was posed to the vocational expert involving any
5  limitation on turning of plaintiff's head.
6       Social Security Ruling 96-8p outlines what a
7  residual functional capacity is.  Obviously, we're all
8  familiar with the fact that it represents the most that a
9  plaintiff can do in a work setting on a regular and
10 continuous basis.  SSR 96-8p requires the examination of any
11 exertional or non-exertional limitations and the RFC must be
12 based on all relevant evidence in the record.
13      The sole medical opinion in the record that speaks
14 to the ability to turn the head and the range of motion of
15 plaintiff's head and cervical spine is Dr. Lorensen's
16 opinion.  As the ALJ noted, Dr. Lorensen's exam reflected a
17 decrease in the cervical range of motion.  That's shown at
18 page 847.
19      There is no question that there are references in
20 the record that both show a decrease in cervical range of
21 motion on examination and show none.  At page 317, on
22 November 6, 2015 plaintiff's orthopedist found a limitation
23 in the range of motion.  Similarly, on December 29, 2015, the
24 orthopedic specialist found a limitation similarly.  That's
25 at page 319.  At 347 plaintiff's pain specialist on

1  February 3, 2016 found a limitation on range of motion.  The
2  orthopedist at SOS on February 17, 2014, SOS having
3  previously treated plaintiff's condition, reflected some, at
4  least minimal, limitation on range of motion.  That's at 711.
5  And plaintiff's pain specialist on July 27, 2016, at
6  page 835, noted a limitation on the range of motion.
7       The problem that I have here is that while
8  Dr. Lorensen is a one-time examiner, her opinion is the only
9  opinion that speaks to the issue.  As Judge Suddaby noted in
10 *Hopkins versus Commissioner of Social Security*, 2015 WL
11 4508630, the regulations on Social Security rulings don't
12 speak to limitations imposed by an inability to maneuver the
13 head and neck, and the DOT descriptions of the limitations
14 that the Administrative Law Judge found plaintiff is capable
15 of performing similarly do not.
16      I agree that Dr. Lorensen's opinion is somewhat
17 vague, but she does find a moderate limitation in that regard
18 and it is supported by her examination which revealed a
19 limitation on plaintiff's range of motion.  It is true that
20 plaintiff has a fairly active life and robust activities of
21 daily living, but as plaintiff has argued, in order to use
22 those to reject a medical opinion, the ALJ has to explain how
23 those activities are inconsistent with an inability or a
24 limitation on the range of motion of plaintiff's head.
25      It may well be that the Administrative Law Judge

1  properly rejected the opinion of Dr. Lorensen, but I think
2  her description of why she did that at page 24 is not
3  sufficiently fulsome to permit meaningful judicial review,
4  and I would have liked to have seen a better explanation of
5  how other medical records and plaintiff's activities could
6  trump the opinions of Dr. Lorensen.
7  　　　　　Plaintiff has made some -- defendant has made some
8  persuasive arguments in the Commissioner's brief that would
9  indicate that Dr. Lorensen's opinion should have been
10 rejected, but I think the Administrative Law Judge should
11 have made those arguments in a way that would afford the
12 opportunity for meaningful judicial review.
13 　　　　　Because the hypothetical that was posed to the
14 vocational expert and used for both step four and step five
15 findings did not include any limitations on the ability to
16 turn a head, the result cannot stand.
17 　　　　　So I will grant judgment on the pleadings to the
18 plaintiff.  I don't find any persuasive evidence of
19 disability.  It is merely a matter that should be remanded
20 for further consideration of the issue of the ability to turn
21 plaintiff's head.  So I will order a remand without a
22 directed finding of disability.
23 　　　　　I would like to thank you both for your excellent
24 presentations and I hope you have a good day.  Thank you.
25 　　　　　　　　*　　　　　　　*　　　　　　　*

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                              *Eileen McDonough*
                              _____
                              EILEEN MCDONOUGH, RPR, CRR
                              Federal Official Court Reporter